MATTER OF S—M—

In EXCLUSION Proceedings

A-12709704

*Decided by Board May 10, 1962*

Loss of citizenship—Section 350—Dual national—Use of communal land in Mexico.

A dual national of the United States and Mexico who accepts the right to develop a parcel of land in a communal project in Mexico limited to "Mexicans by birth" thereby voluntarily enjoys a benefit of Mexican nationality. Since he has resided in Mexico for 3 years after his 22d birthday and after the benefit was accepted, both occurring after December 24, 1952, he has lost United States citizenship under section 350 of the 1952 Act.

EXCLUDABLE: Act of 1952—Section 212(a)(20) [8 U.S.C. 1182(a)(20)]—No valid immigrant visa.

**BEFORE THE BOARD**

**DISCUSSION:** The special inquiry officer ordered the applicant excluded from admission on the ground stated above and certified the case to this Board for final decision. No change will be made in the special inquiry officer's order.

The applicant seeks admission as a citizen of the United States. The Service claims that he lost his United States citizenship under section 350 of the Immigration and Nationality Act, 8 U.S.C. 1482, by accepting the right to develop a parcel of land in a communal project (ejido) in Mexico. The issue here is, in our opinion, whether the applicant voluntarily utilized benefits from the Mexican government which he would not have been eligible to receive except for the fact that he was a citizen of Mexico.

Section 350 of the Immigration and Nationality Act provides, with certain exceptions not applicable here, that:

A person who acquired at birth the nationality of the United States and of a foreign state and who has voluntarily sought or claimed benefits of the nationality of any foreign state shall lose his United States nationality by hereafter having a continuous residence for three years in the foreign state of which he is a national by birth at any time after attaining the age of twenty-two years * * *.

The following extract from Article 27 of the Mexican Constitution is considered pertinent:

664

The ability to acquire domain over the lands and waters of the nation shall be governed by the following laws: (1) Only Mexicans by birth or naturalization and Mexican societies have the right to acquire domain over lands, waters and their accessions, or to obtain grants to exploit mines, waters or combustible minerals in the Mexican Republic. The state may grant the same right to foreigners if they agree before the Secretary of Relations to be considered as nations with respect to said rights, and not to invoke, by the same token, the protection of their government insofar as it refers to them; under the penalty, in case of failure to comply with the agreement, of losing, to the benefit of the nation, whatever rights they would have acquired by virtue of same. In a zone of 100 kilometers along the land boundaries or 50 along the sea shores, for no reason may foreigners acquire direct domain over lands and waters. (Exh. 11)

The following articles of the Agrarian Code of Mexico are applicable:

Article 54: Those country dwellers who fulfill the following requirements will have capacity to obtain unit of endowment or parcel by means of endowment, enlargement, creation of new centers of population or accommodation on surplus public lands:

1. To be a Mexican by birth, a male over 16 years, if single, or of any age, if married, or a single woman or widow if she has a family in her charge.

Article 152: Upon partition of the cultivated lands, the possession of these will pass, with the limitations established by this Code, to the landholders in whose favor the parcels of land shall be adjudicated.

Article 154: The certificates of agrarian rights will be issued prior to the determination of the annual rental and should not be extended in a greater number than the landholders who can conveniently maintain or support themselves from the land, bearing in mind the extent and quality of the lands over which he commands. (Exh. 12, parts 1 and 2)

The facts are fully stated by the special inquiry officer. Briefly, the applicant was born in Texas on March 19, 1923, to parents who are natives and citizens of Mexico. At birth he acquired the nationality both of the United States and Mexico. He was taken to Mexico when he was about four years of age to be raised by his grandparents since his mother was ill. In 1940, he learned for the first time that he had been born in the United States. In 1946, Mexico granted him the right to farm a plot of about 30 acres in a communal project. On September 10, 1951, he was granted a "title" to the plot which is about 31 kilometers from the border. The title guarantees the applicant's rights over the plot of land and guarantees that he may freely enjoy the benefits of his plot according to the "lawful regulations in effect" and guarantees him "peaceful possession" of the plot (Exh. 7). The applicant continues to farm the plot and has resided in Mexico continuously since he was brought there at the age of four.

The Service urges that the applicant's loss of United States nationality was brought about under section 350 when, claiming the benefits of his Mexican nationality, he accepted the right offered by the Government of Mexico to develop the plot of land to which he subsequently obtained "title" and continued to take advantage of the bene-

fits of such membership for three years after December 24, 1952, when section 350 became effective.[1]

Counsel contends that the Service has failed to show that the applicant's claiming of benefits was voluntary, since applicant's testimony reveals that he did not apply for the use of the land, but it was granted to him as a matter of course because of his service in the Mexican army. Counsel contends also that the constitutional requirement that "domain" over land within 100 kilometers be reserved to Mexicans is not applicable because the applicant was not the owner of the land but merely has certain rights in the land.

It is unnecessary to decide whether the applicant's rights to the land constituted the "direct domain" reserved in the border zone only to Mexicans by the constitution, for it appears to us that Article 54 of the Agrarian Code of Mexico limits the obtaining of a unit in the communal projects to "a Mexican by birth"; thus, the obtaining of a unit in such a parcel would be the enjoyment of a benefit which could not have been obtained by one who was not a Mexican by birth. Moreover, we believe that there was a voluntary enjoyment of this benefit. Whether applicant applied for it or not, it was made available to him if he desired to take it. It is not shown that the law required that a former soldier enjoy such a benefit, and it appears he was free to take or reject the right to work the communal land. We must, therefore, conclude that the applicant voluntarily accepted the benefits of his Mexican nationality; he has maintained a continuous residence in Mexico for three years after his 22d birthday and after the benefit was accepted; therefore, he has lost United States citizenship under section 350 of the Act (*Matter of C—E—*, 7—599).

**ORDER:** It is ordered that no change be made in the order of the special inquiry officer.

---

[1] To fall within section 350 of the Immigration and Nationality Act, the use of the benefit must be after December 24, 1952, the effective date of the Act, and foreign residence must continue for 3 years after the same date, and after the person reached the age of twenty-two (*Matter of G—Q—*, 7—195).